UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA MARTINEZ, PEDRO BERNAL, and A.B., a minor, by and through her Guardian ad Litem, William Phippard,<br><br>Plaintiff,<br><br>v.<br><br>SHALON NIENOW, M.D., SARAH VEGA, M.D.; NATALIE LAUB, M.D.; RADY CHILDREN'S HOSPITAL; COUNTY OF SAN DIEGO; SOCIAL WORKER 1; SOCIAL WORKER 2; and DOES 1 through 50 Inclusive,<br><br>Defendants. | Case No.: 23-cv-02338-RBM-AHG<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART AND DENYING IN PART MOTION TO APPROVE MINOR'S COMPROMISE AND APPROVING ALTERNATIVE SETTLEMENT STRUCTURE**<br><br>**[ECF No. 4]** |

Before the Court is the Petition to Approve Minor's Interest in the Settlement of Action with the County of San Diego ("Petition"), filed on January 29, 2024 by Plaintiffs Brenda Martinez, Pedro Bernal, and minor Plaintiff A.B., by and through her guardian ad litem William Phippard ("Plaintiffs"). ECF No. 4. The Court ordered Plaintiffs to provide supplemental briefing and lodgments, which they did on January 27, 2024, and held a hearing on the Petition on February 2, 2024. ECF Nos. 8, 9, 13, 16. This Report and Recommendation follows.

## I.   BACKGROUND

Plaintiffs filed this action on December 27, 2023, bringing constitutional claims against numerous Defendants, including the County of San Diego, Social Worker 1, and Social Worker 2 ("the County Defendants"). ECF No. 1.

According to the Complaint, minor A.B. is a special needs child with a number of severe medical conditions, including global developmental delay, developmental dysplasia of the hip, hydronephrosis, and skin conditions including vitiligo and urticaria. *Id.* ¶ 14. She is essentially nonverbal and able to speak fewer than six words, although she has developed her own form of sign language to communicate with her family members. *Id.* ¶¶ 14-15. During the events underlying this action, A.B. was four years old. *Id.* ¶ 15. Plaintiffs allege that in January 2022, following the recommendation of A.B.'s urologist, A.B.'s mother Plaintiff Brenda Martinez brought A.B. to Urgent Care at the Rady Children's Hospital ("Rady") to have a rash and hives evaluated. *Id.* ¶¶ 16-17. At Rady, A.B. was treated by Emergency Department doctor Michele A. McDaniel, whose differential diagnosis included "inflicted injury such as strangulation" based on a petechial patch along A.B.'s neck and petechiae to the skin surrounding A.B.'s eyes, which appeared as bruising. *Id.* ¶ 17. Dr. McDaniel then spoke with Defendant Dr. Nienow, the on-call child abuse pediatrician, who reviewed photographs taken in the emergency room to conclude that a "strangulation event" had occurred, and that bruising on A.B.'s abdomen was "highly suspicious for a human bite mark." *Id.* ¶ 19. Dr. Nienow advised that an immediate report should be made to law enforcement and child welfare services, and, following the report, she told County social workers that strangulation was the only explanation for the marks on A.B.'s neck. *Id.* ¶¶ 19-20.

Based on the information received from Dr. Nienow, County social workers removed A.B. from the custody of her parents and took her to the County's Polinsky Children's Center ("Polinsky"). *Id.* ¶ 21. On January 7, 2022, A.B. underwent a physical examination at Rady's Chadwick Center, without the knowledge or consent of her parents and without a court order. *Id.* ¶ 22. A.B.'s parents were not given an opportunity to be

present for the examination or to explain A.B.'s extensive medical history. *Id.* A.B. was upset and crying at various points of the exam, which included an examination to rule out sexual abuse. *Id.* ¶ 25. Defendant Drs. Vega and Laub concluded from the physical examination that the marks on A.B.'s body were consistent with a strangulation event, and that they could not rule out blunt force trauma as well. *Id.* They further recommended that urine be collected at Polinsky, which was done after the physical exam, again without a court order and without A.B.'s parents' knowledge, consent, or opportunity to be present. *Id.* ¶¶ 25, 27. While A.B. was detained at Polinsky, she was subjected to several more examinations without her parents' knowledge or consent (except for one instance when her parents were able to be present). *Id.* ¶ 29. A.B. also contracted a severe urinary tract infection at Polinsky. *Id.* ¶ 28.

On January 10, 2022, County Defendants Social Worker 1 and Social Worker 2 submitted a detention report to the Juvenile Court, in which they recommended that A.B. continue to be detained at Polinsky or a licensed resource home. *Id.* ¶ 31. On February 1, 2022, the County social workers submitted an additional report to the Juvenile Court in which they once more recommended continued detention, despite having received further information from A.B.'s dermatologist and primary care physician indicating that the bruising could have been caused by A.B. rubbing and scratching her hives, and that the marks on A.B.'s neck and petechiae were consistent with exacerbation of her preexisting rash. ¶¶ 32-33. On February 15, 2022, the County social workers submitted a third report to the Juvenile Court detailing their contacts with A.B.'s regular physicians. *Id.* ¶ 34. The social workers did not make these contacts until nearly a month after A.B. had been removed from the custody of her parents. *Id.* In the third report, the County social workers recommended the petition be dismissed based on the information from A.B.'s regular physicians indicating that A.B.'s bruising and petechiae were not caused by abuse. *Id.* However, although the Juvenile Court gave discretion to the social workers to return A.B. to her parents' custody, they did not do so at that time. *Id.* The Juvenile Court eventually dismissed the petition on March 10, 2022, extended an apology to the family "on behalf of

the justice system," and terminated its jurisdiction over A.B. as part of the order. *Id.* ¶¶ 35-36. The Court also ordered that the County's Revenue and Recovery division were not to collect any reimbursable costs from the parents, but as of the date of the Complaint, the County continued to send delinquency notices to A.B.'s parents in an attempt to collect costs from them arising from the dependency matter, including threats to file a judgment, garnish their wages and bank accounts, withhold tax refunds, and refer the debt to a collection agency. *Id.* ¶¶ 36-37. In all, A.B. was removed from her parents' care and custody and detained for 63 days between January 7 and March 10, 2022.

Relevant to the Petition before the Court, Plaintiffs settled their claims against the County Defendants in November 2023 for a total of $250,000. *See* ECF No. 9-1. Per the terms of the settlement agreement, notwithstanding the settlement, Plaintiffs and the County Defendants agreed that Plaintiffs would name the County Defendants in their Complaint in this Court for the purpose of invoking federal jurisdiction to adjudicate minor Plaintiff A.B.'s settlement. *Id.* at 3. Accordingly, two weeks after filing the Complaint on December 27, 2023, Plaintiffs brought the instant Petition seeking approval of A.B.'s settlement with the County Defendants on January 9, 2024. ECF No. 4.

Plaintiffs seek the Court's approval of the following distribution of the $250,000 settlement with the County Defendants:

- $25,000 of the settlement funds to be distributed to A.B., which Plaintiffs propose be deposited into a blocked savings account at Wells Fargo or another financial institution insured by the FDIC;
- $125,000 of the settlement funds to be distributed to Plaintiffs' attorneys for their fees, made payable to "The Law Office of Donnie R. Cox" (costs of $1,280.00 will be waived);
- $100,000 of the settlement funds to be distributed to adult Plaintiffs Brenda Martinez and Pedro Bernal, to be made payable to "The Law Office of Donnie R. Cox, in trust for Brenda Martinez and Pedro Bernal."

ECF No. 4 at 5-6.

Since counsel's fee agreement with Plaintiffs provides for a 50% contingency fee rate, the Court understands from this proposed distribution that the adult Plaintiffs have been allocated $200,000 (or 80%) of the $250,000 settlement, while minor Plaintiff A.B. has been allocated $50,000 (or 20%) of the $250,000 settlement, with 50% of each recovery amount to go to attorney fees. In other words, Plaintiffs' counsel seeks Court approval of a $25,000 (or 50%) fee to be deducted from A.B.'s $50,000 portion of the total settlement amount, leaving A.B. with a total recovery of $25,000.

## II. LEGAL STANDARD

It is well-settled that courts have a special duty to safeguard the interests of litigants who are minors in the context of settlements proposed in civil suits. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011); *see also* Fed. R. Civ. P. 17(c) (district courts "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*."). To facilitate courts within this district fulfilling the duty to safeguard, Local Rule 17.1(a) provides that "[n]o action by or on behalf of a minor or incompetent will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." CivLR. 17.1(a).

## III. DISCUSSION

The Court must now fulfill its special duty to safeguard the interests of minor Plaintiff A.B. As explained in more detail below, when evaluating whether a minor's compromise is fair and reasonable, the Court must consider not only the fairness of the

amount of the settlement, but the structure and manner of distribution of the assets for the benefit of the minor. *Clines v. Cnty. of San Diego*, No. 20-cv-2504-W-BLM, 2022 WL 16851818, at *2 (S.D. Cal. Nov. 10, 2022), *report and recommendation adopted sub nom. K.C.A. by & through Purvis v. Cnty. of San Diego*, 2022 WL 17097422 (S.D. Cal. Nov. 21, 2022). This analysis requires the Court to approve the attorney fees to be paid for representation of a minor, which the Court will address first given the high contingency fee rate requested by counsel in this case. *See id.* at *3.

### A. Attorney Fees and Costs

Attorney fees and costs are typically controlled by statute, local rule, or local custom. In California, fees in minors' cases have historically been limited to 25% of the gross recovery. *See, e.g.*, *Napier v. San Diego*, No. 15-cv-581-CAB-KSC, 2017 WL 5759803, at *9 (S.D. Cal. No. 28, 2017) (explaining that attorney fees for representing a minor have historically been limited to 25% of the gross recovery); *Clines*, 2022 WL 16851818, at *2 (same). However, in 2011, the Ninth Circuit issued a decision in *Robidoux v. Rosengren*, 638 F.3d 1177 (9th Cir. 2011), which changed the landscape on whether attorney fees in excess of 25% of the gross settlement amount could be approved as reasonable in a minor's compromise case in federal court. Specifically, the *Robidoux* court explained that district courts in the Ninth Circuit had typically applied "state law and local rules governing the award of attorney's fees" in such cases, but that "this approach places undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery to the minor plaintiffs under the proposed agreement." *Id.* at 1181. Notwithstanding this holding in *Robidoux*, federal courts sitting in California still regularly apply California law when evaluating whether the attorney fee portion of a minor's settlement is reasonable. *See, e.g.*, *Garcia v. Cnty. of San Diego*, No. 15-cv-189-JLS-NLS, 2022 WL 2973429, at *2 (S.D. Cal. July 27, 2022) ("As to the minors, district courts in California apply California law to evaluate calculations of attorney's fees for minor plaintiffs.") (citing *A.G.A. v. Cty. of Riverside*, No. EDCV 19-00077-VAP (SPx), 2019 WL 2871160, at *3 (C.D. Cal. Apr. 26, 2019)); *Clines*, 2022 WL 16851818, at *2 ("The

California Probate Code provides the applicable statutory scheme for approval of a minor's compromise under state law").

In California, courts are required to approve the attorney fees to be paid for representation of a minor. *See* Cal. Prob. Code § 3601; Cal. Rule of Ct. 7.955. In instances where a contingency fee has been proposed, "most courts require a showing of good cause to award more than 25% of any recovery" whereas a greater reward is "rare and justified only when counsel proves that he or she provided extraordinary services." *Schwall v. Meadow Wood Apts.*, No. CIV. S-07-0014 LKK, 2008 WL 552432, at *1–*2 (E.D. Cal. Feb. 27, 2008) (internal quotation marks omitted).

Courts in California assess the reasonableness of the attorney fee requested in a minor's compromise case by applying the following factors set forth in California Rule 7.955:

> (1) The fact that a minor or person with a disability is involved and the circumstances of that minor or person with a disability.
> (2) The amount of the fee in proportion to the value of the services performed.
> (3) The novelty and difficulty of the questions involved and the skill required to perform the legal services properly.
> (4) The amount involved and the results obtained.
> (5) The time limitations or constraints imposed by the representative of the minor or person with a disability or by the circumstances.
> (6) The nature and length of the professional relationship between the attorney and the representative of the minor or person with a disability.
> (7) The experience, reputation, and ability of the attorney or attorneys performing the legal services.
> (8) The time and labor required.
> (9) The informed consent of the representative of the minor or person with a disability to the fee.
> (10) The relative sophistication of the attorney and the representative of the minor or person with a disability.
> (11) The likelihood, if apparent to the representative of the minor or person with a disability when the representation agreement was made, that the attorney's acceptance of the particular employment would preclude other employment.
> (12) Whether the fee is fixed, hourly, or contingent.
> (13) If the fee is contingent:

        (A) The risk of loss borne by the attorney;
        (B) The amount of costs advanced by the attorney; and
        (C) The delay in payment of fees and reimbursement of costs paid by the attorney.
(14) Statutory requirements for representation agreements applicable to particular cases or claims.

In the Petition, Plaintiffs' counsel seeks 50% of the entire settlement amount of $250,000, for a total attorney fee of $125,000, in accordance with their contingency fee agreement with Plaintiffs. ECF No. 4 at 8. The Court set a fairness hearing in part to explain that the high contingency fee in this case was subject to review based on the California law discussed above. Plaintiff's counsel argues that, under *Robidoux*, the Court cannot consider the percentage of the minor's settlement allocated to attorney fees. *See* 638 F.3d at 1182 ("If the net recovery of each minor plaintiff under the proposed settlement is fair and reasonable, the district court should approve the settlement as presented, regardless of the amount the parties agree to designate for adult co-plaintiffs and attorney's fees."). Some federal courts in California agree with Plaintiffs' counsel's position, reading *Robidoux* to suggest it is improper to evaluate the reasonableness of attorney fee provisions in proposed settlement agreements of minors' claims. *See, e.g.*, *Allison v. Gramercy YZE, LLC*, No. CV-14-00862-MWF (RZx), 2014 WL 12569372, at *3 (C.D. Cal. Dec. 9, 2014) (grappling with reconciling a Local Rule requiring the court to fix amount of attorney fees with *Robidoux*, and deciding to fix attorney fees for the settlement at $0 because the terms of the settlement provided that no attorney fees would be taken from the child's portion of the recovery); *Bagley v. Miller & Desatnik Mgmt. Co.*, No. CV-13-03784-MWF (JEMx), 2014 WL 12607674, at *3 (C.D. Cal. Mar. 17, 2014) (same).

However, several federal courts have declined to follow this approach, and continue to find it appropriate to review the percentage of a minor's settlement allocated to attorney fees when reviewing whether the settlement is fair and reasonable. *See, e.g.*, *Garcia*, 2022 WL 2973429, at *2; *Clines*, 2022 WL 16851818, at *3–4; *E.C. by & through Caraballo v. Lincoln Mil. Prop. Mgmt. LP*, No. 21-CV-2070-JES-BLM, 2023 WL 4686447 (S.D. Cal.

July 21, 2023); *A.G.A.*, 2019 WL 2871160, at *2–3; *Williams v. Dumaguindin*, No. 220-CV-09042-VAP (ASx), 2021 WL 8363237, at *2–3 (C.D. Cal. Dec. 23, 2021); *M.A.L. v. City of Fontana*, No. ED 15-CV-00940-VAP (SPx), 2019 WL 13032400 (C.D. Cal. Jan. 7, 2019); *Mendoza v. City of Los Angeles*, No. 221-CV-00786-VAP (RAOx), 2022 WL 2199827, at *3 (C.D. Cal. Jan. 20, 2022). For the reasons explained below, the Court finds it appropriate to follow the approach of the latter group of cases and, in evaluating the fairness and reasonableness of the proposed settlement, will consider the amount of the minor Plaintiff's settlement recovery allocated to attorney fees.

First, as in the *A.G.A.* case decided by the Central District of California, this case is distinguishable from *Robidoux* because, here, the attorney fees are not a material term of the settlement agreement. *See A.G.A.*, 2019 WL 2871160, at *3 ("This case has a key distinguishing feature from the facts presented in *Robidoux*. . . . Here, by contrast, the attorneys' fees at issue are not a material term of the Settlement Agreement, nor is there an express provision for attorneys' fees in the Settlement Agreement. . . . The amount of attorneys' fees at issue here is an independent matter, the obligation arising from the retainer agreements between Plaintiffs and their counsel."). In *Robidoux*, the parties' settlement agreement specifically set forth how the $240,000 settlement amount would be allocated, including that $135,000 would be allocated to pay Plaintiffs' counsel's fee. *Robidoux*, 638 F.3d at 1180. Here, the settlement agreement does not outline the proposed allocation of the settlement funds. *See generally* ECF No. 9-1.

Second, as discussed above, notwithstanding *Robidoux*, federal district courts in California continue to apply California law to evaluate attorney fee allocations from settlement recoveries for minor plaintiffs. *Garcia*, 2022 WL 2973429, at *2. *See also Williams*, 2021 WL 8363237, at *3; *Mugglebee v. Allstate Ins. Co.*, No. 14-cv-2474 JLS-JMA, 2018 WL 1410718, at *4 (S.D. Cal. Mar. 21, 2018). Indeed, Civil Local Rule 17.1 expressly requires the Court to apply California Probate Code §§ 3600, *et seq.* when reviewing the disbursement of settlement funds to a minor who, like A.B., is a California resident. CivLR 17.1(b)(1). California Probate Code § 3601, in turn, provides that a court

reviewing a minor's compromise "shall make a further order authorizing and directing that reasonable expenses . . . including . . . attorney's fees, as the court shall approve and allow therein, shall be paid from the money or other property to be paid or delivered for the benefit of the minor[.]" Cal. Prob. Code § 3601(a). This reasonableness analysis is properly guided by Rule 7.955 under California law. *See Williams*, 2021 WL 8363237, at *3–4 (applying the Rule 7.955 factors when reviewing the reasonableness of the attorney fees to be deducted from a minor's settlement); *Clines*, 2022 WL 16851818, at *4 (same); *Gonzalez v. Chen*, 128 Cal. Rptr. 3d 604, 607 (Cal. Ct. App. 2011) (explaining that in California, Rule 7.955 governs all determinations of the reasonableness of attorney fees to be awarded from the proceeds of a minor's compromise). Contrary to Plaintiffs' counsel's argument that the Court's analysis should be guided solely by the rule in *Robidoux*, then, this Court has an obligation under the Local Rules to apply California law, which in turn requires the Court to evaluate whether the portion of Plaintiff's settlement recovery to be allocated to attorney fees is reasonable.

Therefore, the Court will now discuss the factors under Rule 7.955(b) most pertinent to A.B.'s settlement with the County Defendants in this case. First, looking to factors 2 and 8 in Rule 7.955(b), the amount of the fee in proportion to the value of the services performed is unreasonably high, and the time and labor required to reach a settlement with the County were minimal. Plaintiffs resolved their claims against the County Defendants before this litigation was even filed. No expert witnesses needed to be retained, and no discovery took place. Counsel's billing records, which were lodged confidentially with the Court, show that only 57.8 of the hours billed by Plaintiff's counsel were specifically attributable to working on the case against the County. An award of $125,000 from the settlement with the County would thus result in a *de facto* hourly rate of $2,162.63. This fee amount is not in proportion to the value of the services performed. Moreover, even if the Court credited all 157.9 hours of work completed by Plaintiffs' counsel on this case towards the appropriate attorney fee award to be collected from the settlement with the County, that lodestar would still yield a *de facto* hourly rate of $791.64. The Court finds

that rate unreasonably high, especially when compared to A.B.'s recovery amount of $25,000, which is equivalent to $396.82 ***per day*** that she was detained and separated from her parents. And in any event, since approximately 100 hours of the work Plaintiffs' counsel has performed on this case were also expended in pursuing the still-live claims against the remaining Defendants, the Court finds it inappropriate to credit all 157.9 hours of work when evaluating the reasonableness of the requested $125,000 fee.

That said, the Court gives due credit to Plaintiffs' counsel's representation that only a few attorneys take on this kind of specialized, high-risk litigation in California and that they "can only handle a few matters at a time" as stated in the Petition, which speaks to factors 7 and 11 in Rule 7.955(b) regarding "the experience, reputation, and ability of the attorney or attorneys performing the legal services" and "[t]he likelihood . . . that the attorney's acceptance of the particular employment would preclude other employment." ECF No. 4 at 7; Cal. Rule of Court 7.955(b)(7), (11). For that reason, the Court agrees it may be appropriate to exceed the historical 25% benchmark in this case. However, although this factor may weigh in favor of approving a higher fee, a 50% contingency fee is not justified. Under factor 13 of Rule 7.955(b), if the fee is contingent, the Court must consider "the risk of loss borne by the attorney," "the amount of costs advanced by the attorney," and "the delay in payment of fees and reimbursement of costs paid by the attorney." Cal. Rule of Court 7.955(b)(13). Here, the risk of loss borne by counsel and the delay in payment of fees and reimbursement of costs are both minimal given the early resolution of Plaintiffs' claims against the County. Plaintiffs' counsel advanced costs of only $1,280.00.

Finally, the factual issues were not complex and there were no novel or complex legal issues, which is an additional factor that weighs against approving the requested fee. Cal. Rule of Court 7.955(b)(3). Based on factors 1, 2, 3, 4, 8, and 13, a 50% attorney fee is not warranted. Nonetheless, the Court gives credit to Plaintiffs' counsel's argument that they litigate only a few cases at a time within a specialized field, and that they have

unparalleled experience and ability in this area of law. Therefore, taking into account factors 7 and 11, the Court finds a contingency fee rate of 30% is justified.

Given that the Court may consider the amount of the attorney fees as an independent matter notwithstanding the ruling in *Robidoux*, and, further, that under California law the Court ***must*** evaluate the reasonableness of the portion of the minor plaintiff's settlement allocated to attorney fees pursuant to Rule 7.955, the undersigned **RECOMMENDS** that the Court find that the requested percentage of attorney's fees to be unreasonable and reduce the attorney fee allocation of minor Plaintiff A.B.'s settlement amount to 30%. To explain this recommendation in more detail, although A.B.'s portion of the $250,000 settlement will remain $50,000, and her parents' portion will remain $200,000, the Court should approve only $15,000 in attorney fees to be deducted from A.B.'s portion, which will leave A.B. with a net recovery of $35,000.

### B. Proposed Net Settlement Amount for Minor Plaintiff

In the alternative, even if the Court strictly applied *Robidoux* as urged by Plaintiffs' counsel and solely looked at the total amount of A.B.'s recovery, the Court should still conclude that the proposed net recovery of $25,000 to A.B. is not "fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181-82. Here, the minor Plaintiff was subjected to invasive medical examinations, including a urine sample and multiple physical examinations with photographs being taken, without her parents' consent or presence. ECF No. 1 ¶¶ 22–29. The nonverbal four-year-old child then developed a severe UTI while she was detained, which was not treated for approximately a week. *Id.* ¶ 28. This detention also caused the minor Plaintiff to be separated from her parents for ***63 days***. ECF No. 4 at 2. Given that the minor Plaintiff would receive less than $400 per day for each day she was separated from her parents, the Court is concerned that the compromise inappropriately discounts the harm that she has suffered.

This concern is magnified when the settlement amounts of factually similar cases are considered. In *Garcia*, another case from this district, the minor plaintiffs were

separated from their mother and subjected to physical examinations without a court order or consent from a parent. *Garcia*, 2022 WL 2973429, at *1. While detained at Polinsky Children's Center for 17 days, one minor plaintiff was raped, and the other minor plaintiff was a three-year-old child who suffered emotional and mental distress due to the removal and placement in the facility. *Id.* The case settled for $1.5 million after seven years of litigation; the minor who was raped received $143,219.70 and the three-year-old minor who was subjected to physical examinations and detained for 17 days received $80,000. *Id.* at 3. Here, although an early agreement was reached, and the Court recognizes that the overall settlement amount is much lower than $1.5 million, it is unreasonable that A.B. would receive less than a third of the settlement amount received by the three-year-old plaintiff in *Garcia*, despite undergoing similar physical examinations and being detained and separated from her parents nearly four times longer.

The $25,000 recovery amount proposed for A.B. in the petition is more in line with cases involving separation periods much shorter than 63 days for children detained under similar circumstances. ECF No. 4 at 2. *See, e.g.*, *Reynolds v. Cnty. of San Diego*, No. 11-CV-1256-JAH-AGS, 2020 WL 4013337, at * 1–2 (S.D. Cal. July 8, 2020) (two minor plaintiffs who were subjected to medical examinations and separated from their parents for only five days were granted $35,000 and $25,000 respectively); *Benavidez v. Cnty. of San Diego*, No. 18-CV-0558-CAB-AGS, 2022 WL 448512, at * (S.D. Cal. Feb. 14, 2022) (approving a $10,000 settlement for each minor plaintiff who was separated from their parents for five days and underwent medical examinations at the Polinsky Children's Center without parents' knowledge, consent, or presence). Additionally, minor plaintiffs who experienced invasive medical exams without any period of detention or parental separation received greater or similar recoveries than the $25,000 proposed for A.B. *See, e.g.*, *Mann v. Cty. of San Diego*, No. 11-cv-0708-GPC, 2020 U.S. Dist. LEXIS 33917, at *4 (S.D. Cal. Feb. 26, 2020) (approving payment of $50,000 per minor for minors subjected to invasive medical exams without parental consent); *Monica Garcia v. County of Orange*, No. 17-cv-07892-JVS-JDEx, at ECF No. 34 (C.D. Cal. Nov. 2, 2020)

(approving $25,733.33 for each of the three minor Plaintiffs who underwent unauthorized medical examinations without the consent or knowledge of their mother, but who did not allege any period of detention or separation from their mother outside of the time taken for the exams). Furthermore, minor plaintiffs who solely experienced parental separation without any invasive medical examinations have received a higher settlement amount than $25,000. *See, e.g.*, *Xoss v. City of Los Angeles*, No. 2:12-cv-1400-PSG-RZ, ECF No. 150, at 2 (C.D. Cal. Dec. 1, 2014) (approving total settlement of $122,959.80 for two minors who were removed from their parents' custody for approximately four months). Therefore, even without considering whether counsel should recover a 50% contingency fee from A.B.'s portion of the settlement, the Court should find that the harm A.B suffered, as alleged in the Complaint, warrants a higher settlement recovery than $25,000. ECF No. 1 ¶¶ 19–37.

In reaching this conclusion, the Court acknowledges that during the fairness hearing, Plaintiffs' counsel insisted that A.B.'s claims against the County are "about the physical exam and only the physical exam" to explain why the proposed recovery of $25,000 for A.B. is a fair and reasonable value. ECF No. 16 at 9. However, this statement directly conflicts with Plaintiffs' allegations in the Complaint. *See* ECF No. 1 ¶¶ 51–58, 76-81. For example, Plaintiffs allege that all named Defendants—including the County Defendants—violated minor Plaintiff A.B.'s civil rights by "acting and conspiring to continue to detain, the person and/or physical and legal custody of the Plaintiff Minor, from the care, custody, and control of her parents, without proper or just cause and/or authority, without parental consent, and without court order, all of which was in violation of Plaintiff's Minor's Fourth Amendment right against unreasonable searches and seizures." *Id.* ¶ 51. With respect to County Defendants Social Worker 1 and Social Worker 2, Plaintiffs allege that they "knew, agreed, and thereby conspired, to unlawfully detain Plaintiff Minor from her parents when they knew they had no grounds to do so," and that they violated A.B.'s procedural and substantive due process rights under the Fourteenth Amendment and her right to a family relationship free from unwarranted state interference under the First Amendment by

removing A.B. from the care and custody of her parents and continuing to detain A.B. without just cause or authority. *Id.* ¶¶ 55-57. Plaintiffs also bring *Monell* claims in the Complaint against the County of San Diego premised on the allegation that the County's "policy of continuing to detain children from their parents when there is sufficient information to demonstrate that there is no probable cause for continued detention" is unconstitutional. *Id.* ¶ 77a.

Plaintiffs' counsel asserts that a settlement recovery of $25,000 is sufficient for the minor Plaintiff when only the physical exams are considered.[1] However, as discussed, the Court's special duty to safeguard minor litigants requires it to "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux*, 638 F.3d at 1181 (citation omitted). Considering the best interests of A.B., the Court finds that limiting its analysis to the physical exams as urged by Plaintiffs' counsel would seriously downplay the harm alleged in this case. Although Plaintiffs' counsel may not believe the detention claim against the County Defendants has much value compared to the claims premised on the physical exams, the fact remains that Plaintiffs brought several claims against the County Defendants explicitly premised on that 63-day detention and settled those claims as part of the settlement agreement before the Court for approval. *See* ECF No. 9-1 (settlement agreement providing that the release of Plaintiffs' claims against the County Defendants included "all claims . . . resulting to or to result from the allegations described in the Claim Against the County of San Diego dated July 1, 2022, including but not limited to the removal of minor [A.B.] from the custody of Brenda Martinez and Pedro

---

[1] Even if the Court gave credit to this assertion and accepted that A.B.'s claims against the County arise solely from the physical exams, the Court is not persuaded that A.B. has little to no memory of the event and no ongoing trauma, as stated in the Petition and reiterated by Plaintiffs' counsel during the hearing. ECF No. 4 at 2; ECF No. 16 at 14-16. A.B. is nonverbal and may be unable to communicate whether such harm has occurred. Additionally, A.B. has not undergone any psychological examinations to support the determination that she has no memory of the exams. That assessment is based solely on lay observations from family members. *Id.* at 15–16.

Bernal on or about January 6-7, 2022; minor [A.B's] time spent in the County's custody following the removal; and minor [A.B.'s] juvenile dependency proceedings and trial[.]" Therefore, the Court has an obligation to protect the interests of the minor Plaintiff and cannot ignore the allegation that the minor Plaintiff was detained and separated from her parents for 63 days in conducting the requisite analysis of cases with similar facts under *Robidoux*.

Here, the minor Plaintiff was subjected to invasive medical exams and separated from her parents for approximately two months. The proposed settlement amount of $25,000 falls short of what minor Plaintiffs have received in similar situations. Therefore, even limiting the scope of the Court's review under *Robidoux* "to the question whether the net amount distributed to [A.B.] in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases[,]" the Court should conclude that a total recovery of $25,000 for A.B. is too low given the harm the minor Plaintiff has suffered. For that reason, even if the Court is disinclined to accept the recommendation above that a 50% contingency fee is not justified, the undersigned **RECOMMENDS** in the alternative that the Court increase A.B.'s total recovery amount from $25,000 to $35,000 to adequately reflect the harm alleged in the Complaint. Under this alternative analysis, the Court should approve the same outcome of an allocation of only $15,000 in attorney fees from A.B.'s gross settlement amount of $50,000, for a net recovery of $35,000 for the minor Plaintiff.

**C. Method of Disbursement**

Under the California Probate Code, various alternative methods are available for disbursement of the funds of a settlement of a minor. *See* Cal. Prob. Code §§ 3600 *et. seq.* In the Petition, Plaintiffs' counsel proposes that A.B.'s settlement funds be deposited into a blocked savings account at Wells Fargo or another FDIC-insured financial institution. ECF No. 4 at 5. The blocked account will belong to A.B. *Id.* No withdrawals of principal or interest may be made from the blocked account without a further written order under this case name and number, signed by a judicial officer, and bearing the seal of this court,

until the minor attains the age of 18 years. *Id.* When A.B. turns eighteen years old, the depository, without further order of this court, is authorized and directed to pay A.B., upon proper demand, all money including interest deposited under this order. *Id.* The money on deposit is not subject to escheat. *Id.*

The Court agrees that this is an appropriate method of disbursement under California Probate Code § 3611(b). Therefore, the undersigned **RECOMMENDS** that the Court approve the disbursement of the settlement funds in accordance with these provisions. Consequently, if the Court adopts either of the above recommendations that A.B.'s recovery be increased to $35,000 and that her attorneys be permitted to collect $15,000 in fees from her gross settlement recovery of $50,000, the Court should further approve the following method of disbursement:

- $35,000 shall be deposited in an insured, blocked account for the benefit of minor Plaintiff A.B.;
- Plaintiff's counsel shall receive $15,000 from A.B.'s gross settlement of $50,000, with any remaining portion of attorney fees to be deducted from the adult Plaintiffs' gross settlement amount of $200,000;[2]
- The adult Plaintiffs' net recovery shall be made payable to "The Law Office of Donnie R. Cox, in trust for Brenda Martinez and Pedro Bernal."

---

[2] The Court recognizes that the contingency fee agreement between Plaintiffs and their counsel permits the attorneys to recoup any amount of their fee not approved by the Court in connection with a minor's compromise from the adult Plaintiffs' portion of the settlement, and that based on this provision, counsel has the contractual right to deduct an additional $10,000 from the adult Plaintiffs' net recovery of $100,000. As discussed during the hearing, the Court is concerned about the ethical implications of this provision of the contingency fee agreement. Plaintiff's counsel has been instructed to review *Matter of Yagman* to ensure that enforcement of this provision would comply with California Rule of Professional Conduct 4-200. *See Matter of Yagman*, No. 91-O-03890, 1997 WL 817721 (Cal. Bar Ct. Dec. 31, 1997).

## IV.   CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) adopting this Report and Recommendation; (2) **GRANTING in part** and **DENYING in part** Plaintiffs' Petition to Approve Minor's Interest in the Settlement of Action with the County of San Diego (ECF No. 4); and (3) **APPROVING** an alternative settlement structure in accordance with the undersigned's specific recommendations herein, resulting in the following distribution to the minor Plaintiff:

    **A.B.:** gross settlement amount of $50,000, less $15,000 in attorney fees, for a net recovery of $35,000, to be paid to A.B. pursuant to Cal. Prob. Code § 3611(b).

The Court submits this Report and Recommendation to United States District Judge Ruth Bermudez Montenegro under 28 U.S.C. § 636(b)(1). **IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **April 29, 2024**. The document should be captioned "Objections to Report and Recommendation."

**IT IS SO ORDERED.**

Dated:  April 15, 2024

                                                               *[signature]*
                                                Honorable Allison H. Goddard
                                                United States Magistrate Judge