# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA MARTINEZ, PEDRO BERNAL, and A.B., a minor, by and through her Guardian ad Litem, William Phippard,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>SHALON NIENOW, M.D., SARAH VEGA, M.D.; NATALIE LAUB, M.D.; RADY CHILDREN'S HOSPITAL; and DOES 1 through 50 Inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.:  23-cv-02338-BJC-AHG<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING MOTION TO APPROVE MINOR'S COMPROMISE**<br><br>**[ECF No. 67]** |

　　　Before the Court is the Petition to Approve Minor's Interest in the Settlement of Action with Rady Children's Hospital and Drs. Shalon Nienow, Sarah Vega, and Natalie Laub ("Petition"), filed on September 29, 2025, by Plaintiffs Brenda Martinez, Pedro Bernal, and minor Plaintiff A.B., by and through her guardian ad litem, William Phippard (collectively, "Plaintiffs"). ECF No. 67. On October 16, 2025, Rady Children's Hospital ("RCHSD") and Drs. Shalon Nienow, Sarah Vega, and Natalie Laub ("Doctor Defendants") filed notices of non-opposition to the Petition. ECF Nos. 69-70. This Report and Recommendation follows.

## I. BACKGROUND

Plaintiffs filed the underlying action on December 27, 2023, bringing constitutional claims against numerous defendants, including RCHSD and the Doctor Defendants. ECF No. 1.

According to the Second Amended Complaint, minor A.B. is a special needs child with a number of severe medical conditions, including global developmental delay, developmental dysplasia of the hip, hydronephrosis, and skin conditions including vitiligo and urticaria. ECF No. 66 at ¶ 11. She is essentially nonverbal and able to speak fewer than six words, although she has developed her own form of sign language to communicate with her family members. *Id.* ¶¶ 11-12. During the events underlying this action, A.B. was four years old. *Id.* ¶ 12. Plaintiffs allege that in January 2022, following the recommendation of A.B.'s urologist, A.B.'s mother Plaintiff Brenda Martinez brought A.B. to Urgent Care at RCHSD to have a rash and hives evaluated. *Id.* ¶¶ 13-14. At RCHSD, A.B. was treated by Emergency Department doctor Michele A. McDaniel, whose differential diagnosis included "inflicted injury such as strangulation" based on a petechial patch along A.B.'s neck and petechiae to the skin surrounding A.B.'s eyes, which appeared as bruising. *Id.* ¶ 14. Dr. McDaniel then spoke with Defendant Dr. Nienow, the on-call child abuse pediatrician, who reviewed photographs taken in the emergency room to conclude that a "strangulation event" had occurred, and that bruising on A.B.'s abdomen was "highly suspicious for a human bite mark." *Id.* ¶ 16. Dr. Nienow advised that an immediate report should be made to law enforcement and child welfare services, and, following the report, she told County social workers that strangulation was the only explanation for the marks on A.B.'s neck. *Id.* ¶¶ 16-17.

Based on the information received from Dr. Nienow, County social workers removed A.B. from the custody of her parents and took her to the County's Polinsky Children's Center ("Polinsky"). *Id.* ¶ 18. On January 7, 2022, A.B. underwent a physical examination at Rady's Chadwick Center, without the presence or consent of her parents. *Id.* ¶¶ 19-20, 44. A.B.'s parents were not given an opportunity to be present for the

examination or to explain A.B.'s extensive medical history. *Id.* A.B. was upset and crying at various points of the exam, which included an examination to rule out sexual abuse. *Id.* ¶ 22. Defendant Drs. Vega and Laub concluded from the physical examination that the marks on A.B.'s body were consistent with a strangulation event, and that they could not rule out blunt force trauma as well. *Id.* They further recommended that urine be collected after the physical exam. *Id.*

On January 10, 2022, County social workers submitted a detention report to the Juvenile Court, in which they recommended that A.B. continue to be detained at Polinsky or a licensed resource home. *Id.* ¶ 24. On February 1, 2022, the County social workers submitted an additional report to the Juvenile Court in which they once more recommended continued detention, despite having received further information from A.B.'s dermatologist and primary care physician indicating that the bruising could have been caused by A.B. rubbing and scratching her hives, and that the marks on A.B.'s neck and petechiae were consistent with exacerbation of her preexisting rash. *Id.* ¶ 26. On February 15, 2022, the County social workers submitted a third report to the Juvenile Court detailing their contacts with A.B.'s regular physicians. *Id.* ¶ 27. The social workers did not make these contacts until nearly a month after A.B. had been removed from the custody of her parents. *Id.* In the third report, the County social workers recommended the petition be dismissed based on the information from A.B.'s regular physicians indicating that A.B.'s bruising and petechiae were not caused by abuse. *Id.* The Juvenile Court eventually dismissed the petition on March 10, 2022, extended an apology to the family "on behalf of the justice system," and terminated its jurisdiction over A.B. as part of the order. *Id.* ¶¶ 28-29. In all, A.B. was removed from her parents' care and custody and detained for 63 days between January 7 and March 10, 2022.

Plaintiffs resolved their claims against the County Defendants in November 2023 for a total payment of $250,000. *See* ECF No. 9-1. In April 2024, the Court granted in part and denied in part Plaintiffs' petition for approval of A.B.'s settlement with the County Defendants, ultimately allocating $35,000 of the $250,000 to A.B. ECF No. 25. In

August 2025, during a settlement conference before the undersigned, Plaintiffs reached a separate settlement with RCHSD and the Doctor Defendants. ECF No. 62.

On September 29, 2025, Plaintiffs filed the instant Petition seeking approval of the proposed distribution of the $200,000 settlement as follows:

- $30,000 allocated to A.B., which Plaintiffs propose be paid to A.B.'s parents, Brenda Martinez and Pedro Bernal, for purposes of A.B.'s care;
- $74,000 in attorney fees, payable to "The Law Office of Donnie R. Cox";
- $96,000 distributed to adult Plaintiffs Brenda Martinez and Pedro Bernal.

ECF No. 67 at 5, 8.

The proposed distribution reflects Plaintiffs' counsel's plan to deduct a 25% contingency fee from A.B.'s $40,000 share of the settlement and a 40% contingency fee from the $160,000 portion allocated to Plaintiffs Brenda Martinez and Pedro Bernal. *Id.* at 8.

## II. LEGAL STANDARD

It is well-settled that courts have a special duty to safeguard the interests of litigants who are minors in the context of settlements proposed in civil suits. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011); *see also* Fed. R. Civ. P. 17(c) (district courts "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*."). To facilitate courts within this district fulfilling the duty to safeguard, Local Rule 17.1(a) provides that "[n]o action by or on behalf of a minor or incompetent

will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." CivLR. 17.1(a).

The Ninth Circuit has established that courts reviewing the settlement of such a claim should "limit the scope of their review to the question [of] whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case [and] the specific claim []." *Robidoux*, 638 F.3d at 1181–82. The Court should also "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id*. at 1182 (citing *Dacanay*, 573 F.2d at 1078). "So long as the net recovery" to each plaintiff "is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Robidoux*, 638 F.3d at 1182.

## III. DISCUSSION

To fulfill its special duty to safeguard the interests of A.B., the Court will analyze the proposed settlement amount, the requested attorney fees, and the method for disbursing A.B.'s net recovery.

### A. Proposed Net Settlement Amount for Minor Plaintiff

In considering a petition to approve a minor's compromise, courts typically assess "the relative worth of the settlement amount, the circumstances of the settlement, counsel's explanation of their views and experiences in litigating these types of actions, and other, similar compromises that have been approved by courts." *J.T. by & Through Wolfe v. Tehachapi Unified Sch. Dist.*, No. 116CV01492DADJLT, 2019 WL 954783, at *2 (E.D. Cal. Feb. 27, 2019). Taking all relevant considerations into account, the Court concludes that A.B.'s net recovery is fair and reasonable.

The settlement allocates $30,000 to A.B. as her net share of the $200,000 settlement with RCHSD and the Doctor Defendants. ECF No. 67 at 8. This allocation reasonably compensates A.B. in light of the injuries alleged.

Comparable settlements support the reasonableness of this amount. Courts in this district have approved awards within this range for minors separated from their parents and subjected to unauthorized medical examinations. *See, e.g., Benavidez v. Cnty. of San Diego*, No. 18-CV-0558-CAB-AGS, 2022 WL 448512, at *1 (S.D. Cal. Feb. 14, 2022) (approving $10,000 for each minor plaintiff separated from their parents for five days and subjected to medical examinations without parental consent); *Reynolds v. Cnty. of San Diego*, No. 11-CV-1256-JAH-AGS, 2020 WL 4013337, at *1–2 (S.D. Cal. July 8, 2020) (two minor plaintiffs who were subjected to medical examinations and separated from their parents for five days were granted $35,000 and $25,000, respectively); *R.J. v. Cnty. of San Diego*, No. 22-CV-1905-WQH-MMP, 2023 WL 7492151, at *2 (S.D. Cal. Sept. 5, 2023) (approving $10,000 for each minor plaintiff subjected to unauthorized medical procedures without parent consent). A.B.'s recovery is therefore consistent with settlements approved in analogous cases.

The settlement also provides the benefit of certainty, avoiding the risks inherent in proceeding to trial and the significant fees and costs associated with continued litigation. Even if a higher recovery might have been possible at trial, an early settlement secures funds for A.B. that could not be guaranteed at trial. The settlement is also favorable in light of the potential offset attributable to Plaintiffs' earlier settlement with other defendants.

For these reasons, the undersigned **RECOMMENDS** that the Court approve A.B.'s net recovery amount of $30,000 from RCHSD and the Doctor Defendants.

### B. Attorney Fees and Costs

Attorney fees and costs are typically controlled by statute, local rule, or local custom. In California, fees in minors' cases have historically been limited to 25% of the gross recovery. *See, e.g.*, *Napier v. San Diego*, No. 15-cv-581-CAB-KSC, 2017 WL 5759803, at *3 (S.D. Cal. No. 28, 2017) (explaining that attorney fees for representing a minor have historically been limited to 25% of the gross recovery); *Clines v. Cnty. of San Diego*, No. 20-cv-2504-W-BLM, 2022 WL 16851818, at *2 (S.D. Cal. Nov. 10, 2022) (same). However, in 2011, the Ninth Circuit issued a decision in *Robidoux*, 638 F.3d at 1181, which

changed the landscape on whether attorney fees in excess of 25% of the gross settlement amount could be approved as reasonable in a minor's compromise case in federal court. Specifically, the *Robidoux* court explained that district courts in the Ninth Circuit had typically applied "state law and local rules governing the award of attorney's fees" in such cases, but that "this approach places undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery to the minor plaintiffs under the proposed agreement." *Id.* Notwithstanding this holding in *Robidoux*, federal courts sitting in California still regularly apply California law when evaluating whether the attorney fee portion of a minor's settlement is reasonable. *See, e.g.*, *Garcia v. Cnty. of San Diego*, No. 15-cv-189-JLS-NLS, 2022 WL 2973429, at *2 (S.D. Cal. July 27, 2022) ("As to the minors, district courts in California apply California law to evaluate calculations of attorney's fees for minor plaintiffs.") (citing *A.G.A. v. Cty. of Riverside*, No. EDCV 19-00077-VAP (SPx), 2019 WL 2871160, at *3 (C.D. Cal. Apr. 26, 2019)); *Clines*, 2022 WL 16851818, at *2 ("The California Probate Code provides the applicable statutory scheme for approval of a minor's compromise under state law").

In California, courts are required to approve the attorney fees to be paid for representation of a minor. *See* Cal. Prob. Code § 3601; Cal. Rule of Ct. 7.955. In instances where a contingency fee has been proposed, "most courts require a showing of good cause to award more than 25% of any recovery" whereas a greater reward is "rare and justified only when counsel proves that he or she provided extraordinary services." *Schwall v. Meadow Wood Apts.*, No. CIV. S-07-0014 LKK, 2008 WL 552432, at *1–*2 (E.D. Cal. Feb. 27, 2008) (internal quotation marks omitted).

Courts in California assess the reasonableness of the attorney fees requested in a minor's compromise case by applying the following factors set forth in California Rule 7.955 (b):

> (1) The fact that a minor or person with a disability is involved and the circumstances of that minor or person with a disability.
> (2) The amount of the fee in proportion to the value of the services performed.

(3) The novelty and difficulty of the questions involved and the skill required to perform the legal services properly.
(4) The amount involved and the results obtained.
(5) The time limitations or constraints imposed by the representative of the minor or person with a disability or by the circumstances.
(6) The nature and length of the professional relationship between the attorney and the representative of the minor or person with a disability.
(7) The experience, reputation, and ability of the attorney or attorneys performing the legal services.
(8) The time and labor required.
(9) The informed consent of the representative of the minor or person with a disability to the fee.
(10) The relative sophistication of the attorney and the representative of the minor or person with a disability.
(11) The likelihood, if apparent to the representative of the minor or person with a disability when the representation agreement was made, that the attorney's acceptance of the particular employment would preclude other employment.
(12) Whether the fee is fixed, hourly, or contingent.
(13) If the fee is contingent:
    (A) The risk of loss borne by the attorney;
    (B) The amount of costs advanced by the attorney; and
    (C) The delay in payment of fees and reimbursement of costs paid by the attorney.

Plaintiffs' counsel seeks an award of 25% of A.B.'s gross recovery. ECF No. 67 at 8. This percentage is reasonable for several reasons.

First, A.B.'s parents previously agreed to a higher contingency rate, as reflected in the retainer agreement, which provides for a 50% contingency fee. ECF No. 67-1 at 3. Further, Plaintiffs' counsel represents that Plaintiffs—including A.B.'s guardian ad litem—believe the requested fees are "fair and equitable and reasonable under the circumstances given [the] amount of work done and all other considerations." *Id.* at 8. Second, this case involved more than 255 hours of legal work spread across approximately two years of litigation and multiple defendants. *Id.* at 3-4. The work included extensive informal discovery, participation in settlement negotiations, and the preparation of oppositions to motions to dismiss filed by both RCHSD and the Doctor Defendants. *Id.*

Third, Plaintiffs' counsel possesses substantial expertise in this area. Attorneys Donnie Cox and Sarah Marinho are among only approximately eight attorneys in California who represent plaintiffs in matters involving the unlawful removal, detention, and physical exaimination of children, and their offices have handled more than 200 such civil rights cases. *Id.* at 4. Fourth, the Court credits counsel's representation that very few attorneys undertake this kind of specialized, high-risk litigation in California and that they "can only handle a few matters at a time," which speaks to factors 7 and 11 in Rule 7.955(b) regarding "the experience, reputation, and ability of the attorney or attorneys performing the legal services" and "[t]he likelihood . . . that the attorney's acceptance of the particular employment would preclude other employment." *Id.* at 7-8; Cal. Rule of Court 7.955(b)(7), (11). Fifth, the recovery in this settlement is reasonable given the possibility of an offset arising from Plaintiffs' previous settlement with other defendants.

Given the significant experience of Plaintiffs' counsel, the substantial time and resources devoted to the case, and the specialized nature of this type of litigation, the undersigned **RECOMMENDS** that the Court find that the requested percentage of attorney fees to be reasonable.

### C. Method of Disbursement

Under the California Probate Code, various methods are available for disbursing the proceeds of a minor's settlement. *See* Cal. Prob. Code §§ 3600 *et seq.* Plaintiffs' counsel represents that A.B.'s guardian ad litem, William Phippard, "believes that it is in the best interest of A.B. that her parents receive the entire net settlement proceeds from the settlement with the Doctor Defendants and RCHSD." ECF No. 67-1 at 8.

The Court finds this method of disbursement appropriate under California Probate Code § 3611(b). Although A.B.'s parents may receive the settlement proceeds on her behalf, § 3611(b) requires that the funds be deposited into an insured account in a financial institution within this state, or in a single-premium deferred annuity, and that the account be subject to withdrawal only upon further order of the Court. Thus, A.B.'s parents may not access, transfer, or expend the settlement funds without Court authorization.

23-cv-02338-BJC-AHG

A.B. has been assessed as having a cognitive disability requiring the highest level of support, including "maximum adult assistance" and "extensive accommodation." ECF No. 67-1 at 9. She is expected to remain dependent on her parents for the rest of her life. *Id.* Her Individual Program Plan identifies significant ongoing needs—speech and behavioral support, mobility assistance, and safety supervision—all of which must be funded by her parents. *Id.* Given these circumstances, placing the funds under her parents' care, subject to the statutory requirements and continued court oversight, is in A.B.'s best interest. The Court also notes that A.B. has already received $35,000 from an earlier settlement in this matter, and those funds have been placed into a blocked account. *Id.* at 9.

Therefore, the undersigned **RECOMMENDS** that the Court approve the proposed method of disbursement pursuant to California Probate Code § 3611(b).

## IV.   CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) adopting this Report and Recommendation; and (2) **GRANTING** Plaintiffs' Petition to Approve Minor's Interest in the Settlement of Action with RCHSD and the Doctor Defendants (ECF No. 67).

The Court submits this Report and Recommendation to United States District Judge Benjamin J. Cheeks under 28 U.S.C. § 636(b)(1). **IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **December 19, 2025**. The document should be captioned "Objections to Report and Recommendation." Alternatively, given the underlying motion is unopposed, a party may also file a notice of non-objection with the Court prior to December 19, 2025.

**IT IS SO ORDERED.**

Dated:  December 5, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge